In re USINTERNETWORKING, INC., Debtor.

USinternetworking, Inc., Plaintiff,

v.

General Growth Management, Inc., Defendant.

Bankruptcy Nos. 02–50215–SD to 02–50219–SD.
Adversary No. 02–5858–SD.

United States Bankruptcy Court, D. Maryland.

May 3, 2004.

Karen Moore, Carol L. Hoshall, White-ford, Taylor & Preston, LLP, Baltimore, MD, for Plaintiff.

Scott D. Field, Bethesda, MD, for Official Committee of Unsecured Creditors.

Douglas B. Riley, Lawrence Joseph Yumkas, Rosenberg, Martin, Funk, Greenberg, LLP, Baltimore, MD, for Defendant.

***MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II AND IV OF DEBTOR'S AMENDED COMPLAINT***

E. STEPHEN DERBY, Bankruptcy Judge.

The question raised by Defendant's motion for partial summary judgment is whether this court should facilitate the reorganized Debtor's pursuit, for its benefit, of a potentially valuable cause of action

for breach of contract that the Debtor failed to disclose to its creditors or to the court, in its schedules or in its disclosure statement, before confirmation of its Chapter 11 plan of reorganization. The answer is no.

## I. *Facts Not in Genuine Dispute*

In its amended complaint the reorganized USinternetworking, Inc. alleges that the Defendant, General Growth Management, Inc. ("GGMI"), breached a services contract and caused USi more than $11 million in damages. GGMI has filed a motion for partial summary judgment as to Counts I, II, III and IV. Count III was dismissed previously by order dated September 26, 2003 for failure to state a claim of action upon which relief could be granted.

The dispute between USinternetworking, Inc. ("USi") and GGMI centers around the agreement between USi and GGMI for USi to create and implement an internet service solution for GGMI (the "Agreement"). The Agreement provided it was to be governed by the laws of Illinois. GGMI was obligated to pay USi in monthly installments over the 39 month term of the Agreement. Specific terms relating to the installment payments were set forth in schedules attached to the Agreement. The Agreement also contained a Limitation of Liability Clause ("LLC") that purported to limit the liability for breach to the amount of fees actually paid under the Agreement, and to disallow recovery for consequential damages. On May 31, 2001, GGMI terminated the Agreement, citing USi's failure to meet certain terms as appropriate grounds for cancellation.

The amended complaint consists of five counts, summarized below.

*Count I. Declaratory Judgment:*

USi seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. Specifically, USi asks the court to declare that (1) the LLC conflicts with the payment schedules, and (2) that the payment schedules control, so that USi may seek full recovery of its damages for breach of contract, unrestricted by the LLC.

*Count II. Reformation:*

USi asks for reformation of the LLC. Specifically, USi argues that this clause was not negotiated by the parties and it was slipped in at the last second without its knowledge.

*Count III. Declaratory Judgment:*

USi sought a declaratory judgment that GGMI had waived any prepetition defaults of USi. This count was dismissed by the court's prior order.

*Count IV. Breach of Contract:*

USi alleges that GGMI wrongfully terminated the Agreement and requests compensatory damages in the amount of $11,160,200, plus prejudgment interest on unpaid fees.

*Count V. Objection to Claims:*

USi objects to GGMI's claim of $650,000 because it alleges that GGMI, not USi, breached the Agreement.

USi and its related entities filed their voluntary petitions for reorganization under Chapter 11 on January 7, 2002. The cases were jointly administered under USi's case. This was a planned filing, but the plan was not pre-packaged. USi advised the court in its first day motions that it had received letters of intent from Bain Capital Partners, LLC for an investment of up to $100 million if certain conditions were met. These conditions included the investor owning most of USi's common stock and reaching agreement on restructuring all of USi's debt. While USi and the investor had reached agreement on the principal terms for an investment and restructuring, "USi was unable to reach agreement with its equity holders and debt

holders and Bain for an out-of-court restructuring." *E.g.,* Dkt. No. 12, ¶ 14; see also *id.* at ¶ 13.

The reorganization case proceeded on an accelerated basis. USi filed its schedules on January 15, 2002. Neither its Statement of Financial Affairs or its Schedules disclosed the existence of a claim against GGMI. Dkt. Nos. 74, 75. USi never amended its Statement of Financial Affairs or its Schedules to disclose such a claim.

The cover page for USi's Schedule B—Personal Property states: "... list all personal property of the debtor of whatever kind." Item 20 on Schedule B calls for "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to setoff claims." USi included one item in this category of personal property, a Maryland Sales and Use Tax refund claim for $2,008,000, but it did not include its claim against GGMI here, or elsewhere on Schedule B, as an Account Receivable or otherwise. The Executive Vice President and Chief Financial Officer of USi, William H. Washecka, executed USi's schedule by declaring "under penalties of perjury that I have read ... Schedule B ..., and that [it is] true and correct to the best of my knowledge, information and belief. Although every effort has been made to make the Schedules accurate and complete, because of the magnitude and complexity of the task, inadvertent errors or omissions may exist."

A committee of unsecured creditors was appointed by the U.S. Trustee on January 15, 2002 (Dkt. No. 77), and from the court's observation, the committee was actively involved in the administration of this case.

USi filed its initial disclosure statement and plan on January 28, 2002. Dkt. Nos. 99, 100. On February 15, 2002 it filed a first amended disclosure statement and plan, and on March 15, 2002 it filed a second amended disclosure statement and plan. Dkt. Nos. 166, 167, 252, 253. An amended second amended disclosure statement and an amended second amended plan were filed on March 19, 2002. Dkt. Nos. 270, 271. At hearings on March 19 and March 22, 2002, the Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Reorganization, with further amendments and interlineations, and revised notice procedures were approved by the court for submission to creditors to solicit votes for USi's plan of reorganization. Dkt. Nos. 276, 286, 287, 288. USi did not disclose that it possessed a claim against GGMI in its approved disclosure statement or in any draft thereof that was filed in its bankruptcy case. Such a claim is also not mentioned or specifically treated in USi's plan of reorganization that was circulated to creditors and on which they voted. See Dkt. No. 289.

On March 27, 2002, before confirmation of its plan of reorganization, USi filed its original complaint against GGMI in the Circuit Court of Cook County, Illinois. The complaint alleged breach of a contract entered into on September 29, 2000 that had been terminated on May 31, 2001 by GGMI. USi did not quantify its alleged damages. It claimed damages in an amount to be determined after trial. Def. Memo., Exh. D. After GGMI filed its proof of claim in USi's bankruptcy case, USi voluntarily dismissed its Illinois litigation. USi filed the instant adversary proceeding on October 24, 2002, five and one-half months after confirmation of its plan of reorganization.

USi, by its senior vice president, general counsel and secretary, William T. Price, acknowledged that it knew shortly after May 1, 2001 that GGMI's position was that its contract with USi had been terminated.

At the time USi's position was that GGMI owed USi the remaining contract value, which was approximately $11 million as of April 1, 2001. Def. Memo., Exh. C ("Price Deposition"), p. 220–221. USi's board was advised. *Id.* at p. 221. USi was aware of its claim against GGMI as of June 22, 2001, and by letter it proposed that GGMI make a settlement payment to it of more than $1 million. *Id.* at p. 228 and Dep. Exh. 71; Def. Memo., Exh. B, Affidavit of Daniel J. Sheridan, at Exh. 2. Also, as of August 15, 2001 Mr. Price further testified USi was aware of its claims against GGMI for breaches of their agreement. Price Deposition, p. 230.

The financial projections given to Bain Capital and to its creditors in negotiations, which began with creditors in October, 2001, did not include what GGMI owed to USi. Affidavit of David Miller, Vice President and Treasurer of USi, Exh. 1 to Plaintiff's Opposition to the subject motion ("Miller Affidavit"), ¶s 6, 11. These projections were a liquidation analysis estimating proceeds at $35 to $48 million and going concern balance sheets, income and cash flow statements. *Id.* at ¶s 7, 8.

After a confirmation hearing on May 5, 2002, USi's Second Amended Joint Chapter 11 Plan of Reorganization was confirmed by Order entered on May 8, 2003. Dkt. No. 508. See Dkt. No. 493. USi never advised creditors generally or the court in particular of its contract claim against GGMI during the plan confirmation process.

USi did not disclose its claim against GGMI to creditors because USi had a policy "of not reporting revenue and/or related accounts receivable from clients" who were several months in arrears and from clients who had given USi a termination notice. Miller Affidavit, ¶ 11. Consistent with generally accepted accounting principles (GAAP), "as a general policy, USi would not report such questionable accounts because it might misleadingly overstate USi's reported and potential revenue, earnings and assets." *Id.* at ¶ 13.

Under USi's confirmed plan, all existing shares of stock were cancelled, and new shares of stock were issued to the new investor for $81.25 million, with an additional $25 million investment available if the reorganized USi met certain financial targets. General unsecured claims, senior creditor claims, convertible subordinated note claims, and convenience claims received, or were promised, payment of less than 100% of their claims. For example, USi estimated the recovery for general unsecured claims as 34.34%. See Dkt. No. 288, Discl. Stmt., pp. 12–21. Because deferred payments were represented by notes issued under the plan, the amount of payments to creditors will not be affected by the outcome of USi's breach of contract claim against GGMI. If the reorganized USi obtains a recovery from GGMI, it will keep it all.

## II. Contentions of the Parties

### A. GGMI's Motion for Partial Summary Judgment

GGMI's motion for partial summary judgment on Counts I through IV is based on the doctrine of judicial estoppel. GGMI argues that because USi failed to disclose its unliquidated claim against GGMI in its bankruptcy schedules, disclosure statements, and plan, and because the plan was confirmed, USi is judicially estopped from pursuing this cause of action which was known to it and which it failed to disclose to its creditors and to the court.

### B. USi's Opposition

USi responded with two basic arguments. First, it argues that GGMI's motion for partial summary judgment is procedurally improper because GGMI did not

answer the Amended Complaint and raise estoppel as an affirmative defense as required by Fed.R.Civ.P. 8(c). Second, it contends that none of the four elements of judicial estoppel are present.

### III.  Conclusions of Law

#### A.  Procedural Issue

■ USi contends that because GGMI failed to file an answer in which it asserts judicial estoppel as an affirmative defense, it is now precluded from doing so. Alternatively, USi argues that GGMI should be judicially estopped from claiming it now has an affirmative defense when, in support of its motion to dismiss, it had stated that "no answers or affirmative defenses are pending."

GGMI responds that the procedural argument is moot because GGMI has since filed an answer which contains the affirmative defense of judicial estoppel.

■ An affirmative defense may be waived unless it is raised in a responsive pleading. However, the failure to raise an affirmative defense until the summary judgment phase of a case does not waive a defendant's ability to assert a defense, absent a showing of prejudice to the plaintiff. *Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.*, 983 F.Supp. 640 (D.Md.1997). USi has not even argued that it has been prejudiced by GGMI's delay in pleading judicial estoppel in an answer to the amended complaint. It would be difficult for USi to make such an argument given the fact that GGMI raised the defense in its answer to USi's original complaint. It appears that USi has thus been aware of GGMI's affirmative defense of judicial estoppel since January 28, 2003, the date of GGMI's answer to the original complaint. Consequently, USi's procedural objection will be overruled.

#### B.  Standard for Summary Judgment

Pursuant to Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A material fact is one that might affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. 2505. In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed.R.Civ.P. 56(e). Permissible inferences to be drawn from the underlying facts are viewed in the light most favorable to the nonmoving party, but if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment may be granted. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990).

The moving party bears the burden of producing evidence to demonstrate the absence of any genuine issue of material fact. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Once a motion for summary judgment is made and supported, the nonmoving party "may not rest on the mere allegations or denials of [that] party's motion, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It must show that there is sufficient evidence from which a reasonable factfinder could find its favor. *Id.*

In the instant adversary proceeding there are no genuine issues as to the material facts that: (1) USi knew of its claims against GGMI before filing its Schedules and Disclosure Statement and before its Plan was confirmed; (2) USi failed to disclose its claims against GGMI in its bankruptcy case before its reorganization plan was confirmed; and (3) USi intentionally failed to disclose its claims in its reorganization case because of a company policy.

## C. Judicial Estoppel

■ "Judicial estoppel is an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, West Virginia*, 134 F.3d 1211, 1217 (4th Cir.1998) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir.1995)). To be invoked, the doctrine of judicial estoppel requires four elements to be present: "(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir.1998).

### (1)

■ As to the first element, the issue is whether USi is advancing an assertion in-

consistent with a position it has taken during previous litigation. The previous litigation here is USi's reorganization case, which culminated in an order of this court confirming USi's plan of reorganization. In its reorganization case, USi was required to file, *inter alia*, a "schedule of assets". 11 U.S.C. § 521(1). The Bankruptcy Rules require the schedules to be as prescribed by the Official Forms. Fed. R.Bankr.P. 1007(b)(1). The schedules are due at the outset of the case, with the petition or within 15 days thereafter, unless extended by the court. *Id.* at Rule 1007(c). Official Form 6, for Schedule B requires a debtor to list "all personal property of the debtor of whatever kind." The purpose of the disclosures in these schedules is to allow parties in interest to rely on them during administration of the case. Property of a bankruptcy estate is defined broadly to include: "all legal or equitable interests of the debtor in property as of commencement of the case." 11 U.S.C. § 541(a)(1). This includes all causes of action that could be brought by a debtor. See *Seward v. Devine*, 888 F.2d 957, 963 (2nd Cir.1989).

As part of soliciting the votes of creditors for acceptance of its plan of reorganization, a debtor must transmit to its creditors a written disclosure statement that has been approved by the court "as containing adequate information." 11 U.S.C. § 1125(b). Adequate information is such information as would enable a typical, hypothetical, reasonable investor of each voting class of claims "to make an informed judgment about the plan." *Id.* at § 1125(a)(1).

GGMI posits that USi had an affirmative duty to disclose its claims against GGMI, and the failure to do so constitutes an inconsistent position in a prior judicial proceeding. USi counters that its mere silence, its omission from its schedules of

potential litigation, does not satisfy the inconsistent position requirement. It maintains there could be no misleading of the court from its silence, because the instant complaint does not arise from litigation or the same issue that was before the court when its plan of reorganization was confirmed. Further, USi stresses that it did not provide half truths, make partial disclosure, or make related disclosures. Since it did not list GGMI as a creditor, it asserts there was no need to disclose its claim against GGMI.

■ USi's arguments on this first point are devoid of merit. They fail utterly to recognize the obligation of a debtor to disclose all of its assets, including unliquidated assets, for scrutiny by its creditors and the court during the reorganization process. The court and creditors rely on the nondisclosure of an asset as an implicit denial (excluding assets *de minimis*) of the existence of the asset.

■ "It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.* 11 U.S.C. § 521(1).... 'The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action.'" *In re Coastal Plains, Inc.,* 179 F.3d 197, 207–08 (5th Cir.1999). (Emphasis in the original.) Full and complete disclosure is required to preserve the integrity of the judicial function of the bankruptcy courts. As explained in *Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996):

> The rationale for these decisions [applying the doctrine of judicial estoppel in reference to bankruptcy cases] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain

relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

Accord, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corporation,* 337 F.3d 314, 321–323 (3rd Cir.2003).

■ The doctrine of judicial estoppel has been invoked to bar a debtor that has failed to disclose a claim in its bankruptcy case from later pursuing that claim. See, *e.g., Rosenshein v. Kleban,* 918 F.Supp. at 104–105; *Krystal Cadillac; Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419–420 (3rd Cir.1988); *Coastal Plains,* and cases cited therein, 179 F.3d at 208–209, n. 7. USi's contention that this adversary proceeding does not arise from the same litigation or issue between the parties confuses judicial estoppel with the doctrine of equitable estoppel. "Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida,* 848 F.2d at 419. USi's failure to disclose its $11,000,000 plus claim against GGMI, which is asserted here, in its plan confirmation process, leaving the court to approve its disclosure statement and to confirm its plan without knowledge thereof, undermined the integrity of the judicial process, namely, the court's final decisions on those matters.

USi's reliance on *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d

355 (3rd Cir.1996) for the propositions that silence is not an inconsistent representation of no claim and that the failure to list the claim may be offset by the failure to list GGMI as a creditor, also misses the mark. In *Ryan Operations* the court expressly left open the question whether a bankruptcy debtor's violation of statutory disclosure duties, standing alone, can support a finding that the debtor has asserted inconsistent positions for judicial estoppel purposes. *Id.* at 362. The court did not address the issue since it found judicial estoppel did not apply because there was no evidence of the debtor's bad faith. *Id.* The court's statements about mere silence, in context, were only that it was not reaching the issue. *Id.* at 362. It was in finding no evidence that the debtor deliberately asserted inconsistent positions to gain an advantage that the court noted the debtor's offsetting failures to disclose its claim and its corresponding debt. *Id.* at 363.

In this proceeding, the undisputed testimony is that USi's claim against GGMI was deliberately omitted from its disclosures to creditors and to the court during the bankruptcy case. USi failed to disclose its claim against GGMI even though it had knowledge of the existence of the claim, knew the amount it claimed, had advised its Board, and, ultimately, had filed an action to recover the claim in Illinois. Consequently, the *Ryan Operations* case is inapposite. USi's assertion of Counts I through IV against GGMI is inconsistent with its nondisclosure of those claims in its reorganization case, and the first element of judicial estoppel is satisfied.

### (2)

■ The issues raised by the second element required to trigger judicial estoppel is whether USi took any position at all, but if it did, whether it was a position of law, rather than of fact.

The subject, namely, USi's claim against GGMI, was a fact. The fact of its existence was tacitly admitted by USi when it filed its complaint in Illinois against GGMI during administration of the case. USi, by its general counsel, knew of the claim's existence in 2001, before it filed for reorganization. The claim was property of USi's bankruptcy estate under 11 U.S.C. § 541(a).

USi took a position that the existence of this claim should not be disclosed. In view of USi's obligations to disclose all its assets and property under the Bankruptcy Code and Bankruptcy Rules and Forms, and in view of the sworn certification by USi's Executive Vice President and Chief Financial Officer in executing USi's schedules, USi's nondisclosure amounted to a position that the $11,000,000 claim, in fact, did not exist.

USi contends that the position it took not to disclose was legal, and thus does not satisfy the second element required to invoke judicial estoppel. This contention is flawed, because it focuses on the reasons why USi took the position that the claim need not be disclosed, rather than on the existence of the claim, which was the factual subject matter that was not disclosed. Further, the legal position itself is erroneous.

USi presented testimony that it had a policy of not reporting questionable accounts receivable in its financial statements based on a conservative approach under GAAP. Miller Affidavit, ¶ s 11–13, 24–25. As a result, USi argues it was not required as a matter of legal theory to include its claim against GGMI in its bankruptcy schedules or disclosure statement. Plaintiff's Opposition, p. 12. However, GAAP does not control the definition or value of property in a bankruptcy case.

Cf., *In re Merry–Go–Round Enterprises, Inc. (Devan, Trustee v. CIT Group),* 229 B.R. 337, 342–43 (Bankr.D.Md.1999) (GAAP standards for asset valuation and sum of debts are not synonymous with corresponding standards under the Bankruptcy Code). It is not material to whether disclosure of USi's GGMI claim was required under the Bankruptcy Code that GAAP did or did not require, or excused, its disclosure as an account receivable in USi's financial statements or in a footnote or prohibited its disclosure altogether. For example, the treatment of a contested account receivable under GAAP may be influenced by when it can or should fairly accrue into income, while whether a claim of the debtor must be disclosed in a debtor's bankruptcy schedules is controlled by whether it exists as a legal or equitable right of the debtor. Compare, *e.g.,* Financial Accounting Standards Bd., Fin. Acc'tg Stds No. 5, "Accounting for Contingencies" (1975) with 11 U.S.C. § 541(a).

Since the existence of the claims that were not disclosed by USi in its reorganization case and are asserted now is a matter of fact, the second element for invocation of judicial estoppel is met.

### (3)

▋▋▋▋ Addressing the third element whether the court accepted USi's prior position, USi seeks to refocus the question to whether creditors relied on its bankruptcy disclosures. The logic of its argument is that this reorganization was possible only because an investor would invest $81 million if USi restructured its debts. Since USi had agreements with most, although not all, of its creditors prepetition, creditors were not relying on USi's filings in the bankruptcy court to approve the plan. Consequently, as essentially a prepackaged plan where "the thrust of USi's proceedings before this Court was to have the Court approve those agreements [with creditors] as the basis for reorganization, USi submits that it appears unlikely that the Court took into account the absence from USi's Plan, or Disclosure Statement of any reference to GGMI." Plaintiff's Opposition, p. 14. USi's argument is unpersuasive both as a matter of law and of fact. It is not necessary for the court to find that a creditor actually relied on USi's failure to disclose its claim against GGMI in voting for the plan, because detrimental reliance is not an element of judicial estoppel. The doctrine of judicial estoppel is invoked to protect the integrity of the judicial process. "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, *rather than the litigants,* detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Coastal Plains,* 179 F.3d at 205. (Emphasis in the original.)

USi's contentions that most creditors had reached agreements prepetition and thus were not relying on USi's bankruptcy filings overlooks the acknowledged fact that the financial projections given to creditors during prepetition negotiations also did not include what GGMI owed to USi. USi's argument that it is unlikely the court took into account the absence of the GGMI claim because the only purpose of the bankruptcy court proceedings was to approve USi's agreements with creditors at least implicitly acknowledges this court had some function to serve that was important enough for USi to file a voluntary petition under Chapter 11. While it may be conceptually impossible for the court to state that it relied affirmatively on what it did not know and how it would have acted differently had it known what was not disclosed, the result of such retrospective speculation is not determinative. The focus of judicial estoppel is to protect the legitimacy of judicial orders.

The fact that USi possessed an additional asset, consisting of an $11,169,200 claim that was neither disclosed in its reorganization process nor treated in its plan, was material. USi considered the claim sufficiently valuable to pursue in this litigation. The amount of the claim is 13.7% of the $81.25 million investment that funded the plan. USi's suggestions that its creditors and the court relied on the new investment in approving the plan and not on the absence of this claim is disingenuous. To preserve the integrity of the judicial process leading to confirmation of USi's plan, creditors and the court should have been allowed to consider the impact of the GGMI claim on their decisions in the reorganization process. The infection of the reorganization process resulting from nondisclosure of a debtor's claims against General Motors was described in *Krystal Cadillac* as follows:

> ... the impact of this nondisclosure must be measured in more than monetary terms. Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is. That is particularly important here because, as noted above, Krystal's owner negotiated very substantial compromises of claims against Krystal.

337 F.3d at 325.

It is not difficult to imagine in USi's case, for example, that some portion of any affirmative recovery on the GGMI claim would have been treated as additional recoveries for claims not being paid in full. That is no longer practically possible because the Order confirming USi's plan is final.

Because the nonexistence of these claims was accepted by the court, as well as by other parties in interest, in approving USi's disclosure statement and in confirming its reorganization plan, the third element of judicial estoppel is present.

(4)

█ USi contends the fourth element of judicial estoppel is not satisfied because it had no motive to conceal its GGMI claim and its omission of GGMI from its court filings was inadvertent and not intentional. To the contrary, the testimony of USi's officers was that USi knew about the GGMI claim well before it filed the petition herein, knew its dollar amount, and made a deliberate decision not to disclose it based on its conservative application of GAAP. See Price Deposition, pp. 220–21, 230; Miller Affidavit, ¶ 11. What it had to gain was preservation of all potential recoveries on the claim for itself, without the need to share any portion thereof with its creditors.

USi's suggestion that creditors would benefit from a recovery against GGMI because USi's promised plan payments would be more secure is not persuasive. The amount of creditor payments would not be increased. Further, the fact that creditors agreed to restructure their claims without knowledge of the GGMI claim does not lend credence to USi's argument that it had no motive to keep the claim concealed through the plan confirmation process until a final order was entered. Until a final order was entered, the plan's failure to treat the GGMI claim was subject to modification. 11 U.S.C. § 1127(a).

It is without dispute that USi acted intentionally in failing to disclose its claim against GGMI. It had both knowledge of the claim and a motive to conceal the claim for its own benefit. Consequently, the fourth element for invoking judicial estoppel is satisfied.

## IV. *Conclusion*

There is no genuine dispute of material fact, and the defendant is entitled to judgment as a matter of law based on judicial estoppel of the plaintiff. For the reasons set forth, the four elements for invoking judicial estoppel are present to prevent USi from playing fast and loose with the integrity of the reorganization process in bankruptcy court. See *Havird Oil,* 149 F.3d at 292. First, USi's assertion of this claim against GGMI is inconsistent with its position of not disclosing the claim, although obligated by statute and rule to do so, while prosecuting its plan of reorganization for confirmation by the bankruptcy court. Second, the failure to disclose the claim was a failure to disclose a fact, namely, the existence of claim which was property of its bankruptcy estate. Third, the court and USi's creditors accepted the plan without knowledge of the GGMI claim, and the plan did not treat the claim as property of USi, although it was material. Fourth, USi intentionally, and not inadvertently, failed to disclose its known claim against GGMI.

USi acted as if it had the discretion, for its own business reasons, not to disclose the GGMI claim in its bankruptcy reorganization case. To this extent, it proceeded as if it was not a bankruptcy debtor. However, under the Bankruptcy Code, USi did not have the choice not to disclose a material claim that was property of its bankruptcy estate. USi was required to make full and honest disclosure of all its assets of which it was aware, in order for the bankruptcy reorganization process to remain true to its goals. See 11 U.S.C. §§ 521(1), 541(a); Fed.R.Bankr.P. 1007 and Official Form 6. The doctrine of judicial estoppel is invoked to prevent USi from benefiting from its incomplete disclosure.

Therefore, Counts I through IV of USi's complaint are barred by the doctrine of judicial estoppel, and summary judgment will be entered for defendant. Since Count III has already been dismissed, summary judgment will be limited to Counts I, II and IV.