950 A.2d 778

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Ernest S. NICHOLS.**

**Misc. Docket AG No. 25, Sept. Term, 2007.**

Court of Appeals of Maryland.

June 17, 2008.

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Ernest S. Nichols, Bel Air, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, IRMA S. RAKER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned) JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Mary-

land Rule 16–751(a),[1] filed a Petition For Disciplinary or Remedial Action against Respondent, Ernest S. Nichols on August 14, 2007. The Petition alleged that Respondent, who was admitted to the Bar of this Court on December 13, 1995, violated Rules 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.5 (Fees),[4] 1.15 (Safekeeping Property),[5] 1.16(d) (Declining or Terminat-

---

1. Maryland Rule 16–751(a) provides in pertinent part:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [the Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.1 provides:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MRPC 1.3 provides:

 A lawyer shall act with reasonable diligence and promptness in representing a client.

4. MRPC 1.5(a) provides:

 A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

 (3) the fee customarily charged in the locality for similar legal services;

 (4) the amount involved and the results obtained;

 (5) the time limitations imposed by the client or by the circumstances;

 (6) the nature and length of the professional relationship with the client;

 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

 (8) whether the fee is fixed or contingent.

5. MRPC 1.15 provides in relevant part:

 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Mary-

ing Representation),[6] Rule 8.1(b) (Bar Admission and Disciplinary Matters),[7] and 8.4(c) (Misconduct)[8] of the Maryland

land Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer must deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

6. MRPC 1.16(d) provides

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

7. MRPC 8.1 provides in relevant part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

Rules of Professional Conduct ("MRPC") during his represen-tation of Charles Caralle in connection with a personal injury claim and in Chapter 7 bankruptcy proceedings. Pursuant to Maryland Rules 16–752(a) [9] and 16–757(c),[10] we referred the matter to the Honorable Lawrence R. Daniels of the Circuit Court for Baltimore County to conduct an evidentiary hearing and to submit to this Court proposed findings of fact and conclusions of law. Respondent did not answer the Petition, as required by Maryland Rule 16–754,[11] and, therefore, an Order of Default was entered against him and the matter was

---

**8.** MRPC 8.4, in relevant part, provides:

It is professional misconduct for a lawyer to:

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepre-sentation[.]

**9.** Maryland Rule 16–752(a) states:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**10.** Maryland Rule 16–757(c) states in pertinent part:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

**11.** Maryland Rule 16–754, entitled "Answer," states:

(a) **Timing; contents.** Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner. Sections (c) and (e) of Rule 2–323 apply to the answer. Defenses and objections to the petition, including insuffi-ciency of service, shall be stated in the answer and not by preliminary motion.

(b) **Procedural defects.** It is not a defense or ground for objection to a petition that procedural defects may have occurred during disci-plinary or remedial proceedings prior to the filing of the petition.

(c) **Failure to answer.** If the time for filing an answer has expired and the respondent has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply.

scheduled for an evidentiary hearing. *See* Maryland Rule 2–613(b).[12] Although notified by the clerk of the court that the order of default had been entered, *see* Maryland Rule 2–613(c),[13] Respondent did not move to vacate the order, as allowed by Rule 2–613(d).[14] Respondent, however, did appear at the December 20, 2007 hearing.[15]

On January 29, 2008, Judge Daniels issued findings of fact and conclusions of law, in which he found that Respondent violated Rules 1.1, 1.3, 1.5(a), 1.15(a), 1.15(d) and (e), 1.16(d), 8.1(b), but not Rule 8.4(c). Judge Daniels' findings of fact and conclusions of law read in pertinent part:

> The Respondent, Ernest S. Nichols, Esquire, is a member of the Maryland Bar, with an office in Bel Air, Maryland. Charles Caralle retained Mr. Nichols to represent him in connection with personal injuries sustained in an automobile accident in 2003. Mr. Caralle subsequently retained Mr.

---

**12.** Maryland Rule 2–613(b) provides:

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

**13.** Maryland Rule 2–613(c) provides:

(c) **Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

**14.** Maryland Rule 2–613(d) provides:

(d) **Motion by defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

**15.** The averments contained in the Petition For Disciplinary or Remedial Action were admitted at the hearing, and Respondent was not permitted to deny or contradict the averments. *See* Maryland Rule 2–323(e). Respondent, however, contested Bar Counsel's proposed conclusion of law concerning Rule 8.4(c). Upon considering Respondent's argument regarding his conduct and Rule 8.4(c), the hearing judge concluded that Respondent's conduct did not violate Rule 8.4(c).

Nichols to represent him to file a petition for discharge in bankruptcy.

Mr. Nichols prepared and filed the bankruptcy petition, which failed to identify the personal injury claim as an asset. Mr. Nichols later disclosed the personal injury claim to the Bankruptcy Trustee, Bud Stephen Tayman, Esquire, at the meeting of creditors.

Mr. Tayman's office wrote to Mr. Nichols on September 29, 2003, to determine the status of the personal injury case. On October 6, 2003, Mr. Nichols wrote to Mr. Tayman, stating that the case was still unsettled, that he believed that the medical bills exceeded the policy limits and that it was unlikely that Mr. Caralle would receive any money from the case.

The Bankruptcy Court discharged Mr. Caralle's debts in late 2003. Mr. Nichols negotiated a settlement for policy limits, which was, in fact, $100,000.00. Mr. Caralle signed a release on January 23, 2004. Mr. Tayman wrote to Mr. Nichols on February 29, 2004, inquiring about the status of the case. On March 15, 2004, Mr. Nichols replied to Mr. Tayman, informing him that the case had settled for $100,000.00, that he disbursed $43,279.29 to himself for attorney's fees and expenses, and that he disbursed $ 30,-000.00 to Mr. Caralle. He stated that he retained the remaining portion of the settlement proceeds in his escrow account to pay medical bills.

The Bankruptcy Trustee made several attempts to discuss this matter with Mr Nichols. He informed Mr. Nichols that the proceeds of the settlement of the personal injury claim were an asset of the Bankruptcy estate and that Mr. Nichols could not take a fee without approval of the Bankruptcy Court. Mr. Tayman believed that Mr. Nichols should have turned over the remaining funds to him.

Mr. Caralle discharged Mr. Nichols in August 2005, and directed him to send a copy of his file to Caralle's new attorney, Thomas Dolina, Esquire. Mr. Nichols claims he sent the file to Mr. Dolina on February 21, 2006. Mr. Caralle filed a malpractice suit against Mr. Nichols. In

April 2006, he filed a complaint with the Attorney Grievance Commission.

Mr. Nichols forwarded a check to Mr. Tayman in the amount of $33,962.38 on August 31, 2006, representing the funds retained from the settlement proceeds. Although Mr. Tayman has repeatedly explained that Mr. Nichols is not entitled to his attorney's fee without approval of the Bankruptcy Court, Mr. Nichols did not return that fee. Attorney Grievance Commission Investigator, Sterling H. Fletcher, interviewed Mr. Nichols on August 23, 2006. At that meeting, Mr. Fletcher asked Mr. Nichols to produce records concerning his escrow account and the transactions related to Mr. Caralle's case. Mr. Nichols promised to submit the documents by September 16, 2006. Assistant Bar Counsel wrote to Mr. Nichols on October, 11, 2006, to request the records. Mr. Nichols failed to respond to that request.

The Petitioner alleges that Mr. Nichols violated Maryland Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), 1.5(a) (fees), 1.15 (safekeeping of property), 1.16(d) (declining or terminating representation), 8.1(b) (bar admission and disciplinary matters) and 8.4(c) (misconduct).

Mr. Nichols failed to competently represent his client, Mr. Caralle, by failing to include his personal injury claim as an asset when he prepared the bankruptcy petition, by failing to notify the Bankruptcy Trustee of the settlement before funds were disbursed, and by disbursing a large portions of the settlement funds when the Bankruptcy Trustee had a claim to the funds. Respondent's conduct violated Rule 1.1 of the Maryland Rules of Professional Conduct.

At several points in the representation, Respondent failed to act diligently on behalf of his client in violation of Rule 1.3. He did not promptly notify the Trustee of the settlement of the personal injury case. He took a year and a half to deliver the retained funds to the Trustee. He did not respond to the Trustee's messages. He took an inordinate amount of time to forward the client's file to new counsel.

Respondent's fee was unreasonable, in violation of Rule 1.5(a) of the Maryland Rules of Professional Conduct. Re-

spondent was required to obtain permission of the Bankruptcy Court before taking a fee from the settlement proceeds. He failed to obtain that permission and did not return the fee.

Respondent failed to notify promptly the Bankruptcy Trustee that he had received the settlement funds even though he was aware of the claim of the bankruptcy estate. He disbursed $30,000.00 to his client despite the Trustee's claim to those funds. He disbursed attorney's fees and costs to himself even though his fee had not been approved. He then retained over $33,000 for a year and a half before turning the funds over to the Trustee. By this conduct, Respondent violated Rule 1.15(d) and (e).

Respondent violated Rule 1.16(d) of the Maryland Rules of Professional Conduct by failing to forward the client's file to his new attorney for a period of six months.

Respondent violated Rule 8.1(b) by failing to produce bank records regarding his handling of the settlement funds despite the requests of the Commission Investigator and Assistant Bar Counsel

Respondent is alleged to have engaged in acts of dishonesty, deceit and misrepresentation in violation of Rule 8.4(c) of the Maryland Rules of Professional Conduct. His initial failure to disclose the existence of the personal injury claim appears to have been inadvertent since he disclosed the claim to the Trustee at the meeting of creditors. The Respondent believed that the policy limits would be insufficient to cover his client's medical bills when he made that representation to the Trustee. After he made that representation and obtained his client's discharge in bankruptcy, Respondent failed to inform the Trustee that he was settling the case for a substantially larger amount until after he made the improper disbursements to himself and his client, and then only after the Trustee made an inquiry. The Court finds that there is not clear and convincing evidence to establish that Respondent's conduct, under these circumstances, was dishonest or deceitful. Accordingly, the Court finds that Respondent did not violate Rule 8.4.

In summary, this [c]ourt finds by clear and convincing evidence that the Respondent, Ernest S. Nichols, Esquire, violated Rule 1.1, 1.3, 1.5(a), 1.15(d) and (e), 1.16(d), 8.1(b) of the Maryland Rules of Professional Conduct.

Neither Respondent nor Bar Counsel filed exceptions to the hearing court's findings of fact or conclusions of law. Thus, pursuant to Maryland Rule 16–759(b)(2),[16] we elect to "treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." *See Attorney Grievance Commission v. Elmendorf*, 404 Md. 353, 360, 946 A.2d 542, 546 (2008); *Attorney Grievance Commission v. Logan*, 390 Md. 313, 319, 888 A.2d 359, 363 (2005). After a review of the record, we are satisfied that the hearing judge's findings of fact are not clearly erroneous. *See Attorney Grievance Commission v. Dunietz*, 368 Md. 419, 428, 795 A.2d 706, 711 (2002) (noting that despite neither the respondent nor Bar Counsel taking exceptions to the hearing judge's factual findings, the Court shall review the factual findings to ensure that they are not clearly erroneous). Moreover, upon a our *de novo* review of the hearing court's conclusions of law, we hold that the conclusions of law are supported by clear and convincing evidence. Maryland Rule 16–759(b)(1);[17] *Dunietz*, 368 Md. at 428, 795 A.2d at 711.

We are thus left only to resolve the question as to the appropriate sanction to be imposed. Bar Counsel recommends an indefinite suspension. Bar Counsel contends that "Respondent's unauthorized taking of a fee without approval of the Bankruptcy Court is analogous to the taking of a fee

---

16. Maryland Rule 16–759(b)(2) provides in relevant part:

(B) **Review by Court of Appeals.**

\* \* \*

(2) Findings of Fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

17. Maryland Rule 16–759(b)(1) provides:

(B) **Review by Court of Appeals.** Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

from an estate without complying with the relevant statute or obtaining permission of the Orphans' Court." Bar Counsel then points to several recent cases where we indefinitely suspended an attorney for the unauthorized taking of fees without appropriate judicial approval: *Attorney Grievance Commission v. Kendrick*, 403 Md. 489, 943 A.2d 1173 (2008); *Attorney Grievance Commission v. Seiden*, 373 Md. 409, 818 A.2d 1108 (2003); *Attorney Grievance Commission v. Thompson*, 376 Md. 500, 830 A.2d 474 (2003); *Attorney Grievance Commission v. Eisenstein*, 333 Md. 464, 635 A.2d 1327 (1994). Respondent makes no recommendation as to sanction; however, he does request that we take into consideration the potential hardship a suspension would have on his family because he is the sole provider.

 "It is well settled that our obligation in disciplinary matters is to protect the public and maintain the public's confidence in the legal system rather than to punish the attorney for misconduct." *Attorney Grievance Commission v. Ward*, 394 Md. 1, 32–33, 904 A.2d 477, 496 (2006). This Court's goal "when imposing sanctions[,] is to maintain the integrity of the legal profession and to prevent misconduct by other attorneys." *Id.* at 33, 904 A.2d at 496. The severity of the sanction depends on several things, including "the circumstances of each case, the intent to which the acts were committed, the gravity, nature and effects of the violations as well as any mitigating factors." *Id.* To be sure, we have stated that "the gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct." *Attorney Grievance Commission v. Briscoe*, 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000).

 Violations of the Rules stemming from the taking of fees without prior consent of the appropriate judicial authority has warranted both disbarments and suspensions in prior cases before this Court. In our most recent case, *Attorney Grievance Commission v. Kendrick*, 403 Md. 489, 943 A.2d 1173 (2008), we imposed an indefinite suspension because an attorney failed to seek Orphans' Court approval prior to

taking a fee and failed to properly administer the estate. In *Attorney Grievance Commission v. Seiden*, 373 Md. 409, 818 A.2d 1108 (2003), we imposed an indefinite suspension, with leave to reapply after thirty days, because an attorney took his fee from the estate without the permission of the Orphans' Court. In *Attorney Grievance Commission v. Thompson*, 376 Md. 500, 830 A.2d 474 (2003), we imposed an indefinite suspension because an attorney mishandled the administration of an estate, failed to timely file reports and accounts, failed to pay estate taxes at the time of distribution, and failed to obtain prior approval of the Orphans' Court before taking fees. In *Attorney Grievance Commission v. Sullivan*, 369 Md. 650, 801 A.2d 1077 (2002), we disbarred an attorney who, as the personal representative of an estate, failed to administer the estate and took over $50,000 from the estate without prior approval of the Orphans' Court. In *Attorney Grievance Commission v. Owrutsky*, 322 Md. 334, 587 A.2d 511 (1991), we suspended an attorney for three years for his careless and neglectful handling of an estate, his mishandling of estate funds, and his taking of fees without prior court approval. In *Attorney Grievance Commission v. Eisenstein*, 333 Md. 464, 635 A.2d 1327 (1994), we suspended an attorney for two years for taking a fee in a Longshore and Harbor Workers' Compensation Act case before the fee had been approved by an administrative law judge.

Under the totality of the circumstances and in light of our relevant prior cases, we conclude that the appropriate sanction in the present case is an indefinite suspension. In this case, the hearing judge concluded, and we agree, that Respondent's misconduct was due neither to dishonesty nor to criminal conduct, but rather due to lack of diligence as well as incompetence in bankruptcy matters. Indeed, this is Respondent's first disciplinary proceeding in over thirteen years of practicing law. Respondent acknowledges his misconduct as he agrees that he did not seek proper authorization from the Bankruptcy Court before taking his fee and did not follow federal bankruptcy law in his disbursement of the settlement award to his client.

We cannot say, however that he has taken adequate steps to remediate his conduct. It appears from the record, for example, that Respondent has yet to seek approval of his attorney's fee from the Bankruptcy Court.[18] In addition, Respondent failed to cooperate with Bar Counsel and the Attorney Grievance Commission in answering their demands for information.

The suspension shall commence thirty (30) days after the filing of this Opinion.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ERNEST S. NICHOLS.**

RAKER, J., Dissents.

RAKER, J., Dissenting:

I would impose a suspension of thirty days.

---

**18.** Mr. Caralle's personal injury claim became an asset of the bankruptcy estate when he filed his Chapter 7 petition on June 23, 2003. 11 U.S.C. § 541(a)(1); *see also In re USinternetworking, Inc.*, 310 B.R. 274, 281 (Bankr.D.Md.2004) (noting that courts have interpreted 11 U.S.C. § 541(a)(1) to include "all causes of action that could be brought by a debtor"). Ordinarily, pursuant to 11 U.S.C. § 330, an attorney (or other professional), prior to deducting a fee from the proceeds of a settlement or judgment that is the property of a bankruptcy estate, must first secure the bankruptcy court's approval.